## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ONE BEACON INSURANCE COMPANY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION H-08-2059 |
| CROWLEY MARINE SERVICES, INC., | § | |
| | § | Rule 9(h) Admiralty |
| *Defendant, Third Party Plaintiff* | § | |
| v. | § | |
| | § | |
| TUBAL-CAIN MARINE SERVICES, INC., | § | |
| | § | |
| *Third Party Defendant* | § | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

#### INTRODUCTION

This case involves a marine insurance policy issued by One Beacon Insurance Company (One Beacon) to Tubal-Cain Marine Services, Inc. (Tubal-Cain) and a claim for insurance coverage by Crowley Marine Services, Inc. (Crowley) against One Beacon and contractual indemnity and defense against Tubal-Cain.

One Beacon filed this lawsuit against Crowley, a subsidiary of Crowley Maritime Corporation, on June 30, 2008, seeking a declaration that One Beacon has no obligation to defend or provide insurance coverage to Crowley for any claims that have been asserted or that could be asserted, against Crowley in *Marcus Parker v. Tubal-Cain Marine Services, Inc., et al*, No. A-09179775 (58th Dist. Ct., Jefferson County, Tex.) and *In the Matter of the Complaint of HMC Leasing, Inc., et al as Owners/Owner Pro Hac Vice of Barge MWB403 for Exoneration from and or Limitation of Liability*, C.A. No. 1:08-cv-00289 (E.D. Tex.) (hereinafter collectively referred to as "the limitation action").

On August 28, 2008, Crowley filed an answer and counterclaim against One Beacon seeking a declaration that Crowley is an additional insured under the insurance policy issued to Tubal-Cain and is entitled to coverage for the claims asserted against it in the underlying proceedings.

Crowley filed a Third-Party Complaint against Tubal-Cain on October 27, 2008, alleging it is entitled to contractual defense and indemnity from Tubal-Cain based on a repair service order issued by Crowley to Tubal-Cain that referenced terms and conditions posted on Crowley Maritime Corporation's website, which included an indemnity provision and separate insurance provisions. Crowley also alleges, in the alternative, that Tubal-Cain breached its contract with Crowley for failing to obtain adequate insurance, and alternatively, that Tubal-Cain committed fraud and/or made negligent misrepresentations about the insurance coverage it had obtained.

Tubal-Cain filed its answer on November 14, 2008 alleging that Crowley is not entitled to contractual defense and indemnity, asserting that the repair service order was not a contract and there was no written contract between Crowley and Tubal-Cain. Tubal-Cain further alleged that the contract between it and Crowley was oral and did not require Tubal-Cain to provide defense and indemnity or insurance to Crowley. Alternatively, Tubal-Cain alleges that Crowley did not provide sufficient notice of its terms and conditions posted on its website.

At the parties' request, the Court conducted a trial of this matter by written submission.

On February 18, 2010, the Court heard oral argument on the parties' trial by submission and now makes the following findings of fact and conclusions of law. Although One Beacon is the plaintiff in this matter, Crowley bears the burden of proof to establish it is entitled to insurance coverage under the One Beacon Policy. Crowley also has the burden of proof as to its claims against Tubal-Cain.

2

### FINDINGS OF FACT

1.     Crowley owns and operates a large fleet of vessels including tugs, tankers, and specialty offshore work barges.  Crowley routinely sends its vessels to ship yards, such as Tubal-Cain, for repairs to conform to classification society (ABS) requirements.  From 2006 to 2008, Crowley awarded twenty-four repair jobs to Tubal-Cain.  *See* Crowley Exs. 3-25.  In March of 2007, Crowley Port Engineer Ricky Bastian ("Bastian") met with owners and representatives of Tubal-Cain to discuss repairs for one of Crowley's barges, the MWB 403.  Mr. Bastian assigned a Repair Service Order ("RSO") number to the job, and prepared a RSO Write-Up contemplating the initial scope of the repairs to be carried out by Tubal-Cain.  *See* Crowley Ex. 2.  Subsequently, a formal version of RSO 9501229 was issued by Crowley to Tubal-Cain on April 2, 2008.  Crowley Exhibit 3. Crowley used an identical RSO procedure on all of its prior and subsequent jobs with Tubal-Cain.  *See* Crowley Exs. 3-25.  As part of job RSO 9501229, Crowley had Tubal-Cain repair and replace the interior lighting in the MWB 403's machinery space.  Tubal-Cain subcontracted this work to Rio Marine.

2.     On April 1, 2007, Crowley delivered the MWB 403 to Tubal-Cain, and Tubal-Cain began work.  On April 23, 2007, Marcus Parker, an employee of Rio Marine was repairing and replacing the interior lighting of the MWB 403's machinery space and was allegedly injured.  Mr. Parker filed his original state court petition in Cause No. A-0179775, *Marcus Parker v. Tubal-Cain Marine Services, Inc. et al*., in the 58th Judicial District Court of Jefferson County, Texas.

3.     Crowley and others filed a limitation of liability proceeding: C.A. No. 1:08-cv-00289; *In the Matter of the Complaint of HMC Leasing Inc. et al. as Owners/Owners Pro Hac Vice of Barge MWB 403 for Exoneration from and/or Limitation of Liability,* in the United States District Court

for the Eastern District of Texas, Beaumont Division.  An order was issued in the limitation action staying Parker's lawsuit in state court.

*The Repair Service Order Process*

4.      As part of its routine business practice, Crowley issues a RSO number to the vendor for each specific job.  Crowley's port engineer meets with the vendor, discusses the scope of the work, and submits a write-up to his supervisor seeking approval.  Once the write-up is approved, it is forwarded to an Engineering Specialist at Crowley's offices, either in Jacksonville, Florida, or Seattle, Washington.  The Engineering Specialist will then enter the scope of work as well as the vendor identification number to Crowley's automated purchase order and repair service order system, "LAWSON."   *See generally* Crowley Ex. 62 at 11-15.

5.      Jerri Pudwell, Crowley's Engineering Specialist, testified that LAWSON is "hard-coded," or programmed, to automatically place the following unchangeable notice on every RSO:

> THIS RSO ISSUED IN ACCORDANCE WITH THE PURCHASE ORDER TERMS AND CONDITIONS ON WWW.CROWLEY.COM / DOCUMENTS & FORMS UNLESS OTHERWISE AGREED TO IN WRITING.
>
> THE ABOVE REPAIR SERVICE ORDER (RSO) NUMBER MUST APPEAR ON ALL BILLING INVOICES.  FAILURE TO COMPLY WILL RESULT IN INVOICES BEING RETURNED.

All the invoices issued by Tubal-Cain (Crowley Exs. 30-53) referenced an RSO containing this exact notice provision.

6.      Each RSO provides the mailing address for vendors to submit their invoices.  Ms. Pudwell also testified that once a job is finished, the vendor mails its invoice to Crowley, where she processes it.  Ms. Pudwell explained that once the invoice is approved by a Crowley port engineer, it is submitted to Accounts Payable.  The Court finds that this was the process carried out

4

by Crowley port engineer Ricky Bastian and Engineering Specialist Jerri Pudwell for the repair of

barge MWB 403.  Under Rule 406 of the Federal Rules of Evidence, this constitutes a routine

practice that shows that Crowley's behavior conformed to this routine for all twenty-four RSOs

submitted to Tubal-Cain by Crowley.  *See generally* Crowley Ex. 62 at 11-15.

*The Terms and Conditions Contained on Crowley's Website*

7.      Crowley's "Terms and Conditions for Purchase Order Agreements" are available on

its website at www.crowley.com.   The Terms and Conditions require vendors to defend and

indemnify Crowley for any claim that may be brought by a vendor's employees or contractors against

Crowley arising out of the work specified in an RSO.  *See* Crowley Ex. 26.  In addition to requiring

contractual Defense & Indemnity of Crowley by the vendor, the section of the Terms and Conditions

captioned "Insurance" requires vendors to obtain various insurance policies naming Crowley as an

additional insured as shown below:

> 4.      Insurance.  Contractor, at its sole cost and expense (including
> the cost of all deductibles), shall procure and maintain in force during
> the term of this Agreement the following insurance coverages for
> Services and/or Goods supplied under this Agreement:
>
> (1) Worker's Compensation insurance, covering applicable statutory
> benefits in the State where work is being performed; Employer's
> Liability Insurance in an amount of at least $1,000,000 and (when
> applicable) the policy will be endorsed to cover benefits under the
> U.S. Longshoremen's and Harbor Workers Compensation Act, and
> Maritime Act.
>
> (2) Commercial General Liability insurance, on a per occurrence
> basis, endorsed to cover premises operations, products/completed
> operations, personal injury and contractual liability; with no
> watercraft exclusion, with limits of liability not less than $1,000,000
> any one occurrence. Automobile Liability insurance, including
> liability insurance coverage on vehicles which may be used by
> Contractor in connection with this Agreement with limits of liability
> not less than $1,000,000 any one occurrence….

5

All insurance policies maintained by the Contractor shall contain a cross liability provision which provides that, in the event of one of the insureds incurring liability to any other of the insureds, the policy shall cover the insured against whom claim is made or may be made in the same manner as if separate policies has been issued to each insured. All policies of Contractor shall be primary insurance as to any insurance provided or carried by Crowley, and shall not contain any "benefit of insurance", "other insurance" clauses or other contractual provisions which in any way lessen or diminish the full amount of insurance provided to Crowley by the Contractor. The coverages afforded to Crowley as an additional insured shall at least be equal to the coverages afforded the Contractor under such policies and shall in all respects include coverages for the obligations of Contractor under this Agreement. The aforesaid policies will be endorsed to provide Crowley with thirty (30) days written notice prior to cancellation or reduction in coverage required by this Agreement. The insurance policies shall be issued by insurance companies with a Best's rating of at least "B" or equivalent, and shall be subject to Crowley's approval, which shall not be unreasonably withheld. Contractor shall provide Crowley with certificates of insurance prior to the supply of Services and/or Goods under this Agreement. Commencement of this Agreement without receipt of the aforesaid certificates shall not constitute a waiver of the obligation of the Contractor to maintain the required insurance coverages and to provide Crowley with the aforesaid certificates.  Should Contractor fail to procure or maintain any of the aforesaid insurance coverages, or by any act or omission, vitiate or invalidate any of the aforesaid insurance coverages, Contractor shall indemnify Crowley and the other beneficiaries of said insurance to the extent they or any of them suffers or incurs loss, damage, liability or expense in consequence of such failure, act or omission. It is expressly understood that the Contractor shall notify Crowley Risk Management Department of any accident involving the Property, advising names of parties involved, location of accident, witnesses, and confirmation of prompt reporting to the responsible insurance agent of the Contractor, as identified on the Contractor's Certificate of Insurance. Certificates of Insurance should be sent to:

Crowley Maritime Corporation
Risk Management Department
9487 Regency Square Blvd.
Jacksonville, FL 32225
Fax: (904) 805-1639
Email: vendor.insurance@crowley.com

*See* Crowley Ex. 26.  Clause 2 of the Terms and Conditions explicitly states that they apply to all oral agreements for services.  *Id.*

8.      Crowley's Terms and Conditions remained unchanged from the first RSO issued to Tubal-Cain through the RSO forming the basis of this dispute.  This was established by Daniel Mock, the Crowley employee who has been in charge of the Crowley website since 2001.  Mr. Mock originally posted the Terms and Conditions on the website in 2004.  He testified that the Terms and Conditions remained unchanged through all twenty-four jobs Tubal-Cain did for Crowley.  Crowley Ex. 61 at 11.

*The Written Contract Between Crowley and Tubal-Cain*

9.      The parties disagree over whether the agreement to repair the MWB 403 was oral or written.  The parties do not dispute, however, that RSO 9501229 is a purchase order.  Mr. Van Huis, the president of Tubal-Cain, testified that the RSO is a purchase order.  *See* Crowley Ex. 59 at 89.  Purchase orders are written contracts, and for the reasons set forth more fully in the Court's Conclusions of Law, the Court finds that there was a written contract or agreement in place between Crowley and Tubal-Cain for the job in question.

*Tubal-Cain Had Notice of Crowley's Terms and Conditions*

10.     Having found that a written contract existed between Crowley and Tubal-Cain, the Court now must determine whether sufficient notice of the Terms and Conditions posted on Crowley's website was provided to Tubal-Cain.  If there was not sufficient notice of the Terms and Conditions, Tubal-Cain cannot be bound by them.

11.     Tubal-Cain and Crowley entered into agreements for twenty-four ship repair jobs.  In each of these jobs there was an RSO issued containing identical notice provisions.  Mr. Eddie Van Huis, president of Tubal-Cain, testified he would receive each RSO, and note the specific RSO

number, and put it on each of Tubal-Cain's corresponding invoices.  He would then send his invoice to Crowley for payment.  Crowley Ex. 59 at 30, 94; and Crowley Ex. 64.  The job forming the dispute between the parties in this case, RSO No. 9501229, was the ninth of twenty-four jobs Tubal-Cain performed for Crowley using the same process.

12.     Mr. Van Huis testified that each of the RSO's he received for the Crowley jobs had the same notice indicating the Terms and Conditions were on the website.  Crowley Ex. 59 at 102.  When asked if he understood what "issued in accordance with the purchase order terms and conditions" meant, he volunteered:  "with Crowley's terms, yes."  *Id.* at 104-05.

13.     Mr. Van Huis was then asked if he understood what "on www.crowley.com / Documents & Forms" meant.  He testified in the affirmative and noted that he could have gone to the Crowley website and looked up the Terms and Conditions if he had chosen.  He knows how to use the Internet, and had a computer that worked at all times material to this dispute.  Crowley Ex. 59 at 99-100.

14.     Mr. Van Huis explained that he chose not to check the Terms and Conditions on the websit*e because he believed* there was "no written contract" between Tubal-Cain and Crowley and therefore in his mind "there would not be a need to."  Crowley Ex. 59 at 99-100.  Nevertheless, the Court finds that he had access and fair opportunity to review the Terms and Conditions had he chosen to do so.  The notice given as to the location of the Terms and Conditions was reasonable such that a reasonable person could have accessed them.  The fact that a party chooses not to review a contract, or terms and conditions, when they had the opportunity does not negate the fact that they are bound by those Terms and Conditions.  In this case the Court finds that Tubal-Cain had actual notice of the Terms and Conditions, despite Mr. Van Huis's decision not to review them.

*Notice was Reasonable*

15.     Tubal-Cain and One Beacon argue that the Notice quoted in paragraph 5, above, is legally insufficient as it is not a "hyperlink" and that when one types the exact notice reference from the RSO into a web browser, it does not immediately pull up the Crowley Terms and Conditions.

16.     The RSO is a paper form.  Accordingly, it is not possible to "click" on the notice and go anywhere through the Internet.  However, Tubal-Cain and One Beacon are correct that if the exact language in the notice is typed into a web browser, it will not pull up the Terms and Conditions or the Crowley website.  Daniel Mock testified that the language in the notice is not a hyperlink, or something to be typed into one's browser.  The words are merely directions to assist one in finding the Terms and Conditions on the Crowley website.  Crowley Ex. 61 at 15.

17.     The text on the RSO cannot simply be "mouse-clicked" to take a viewer to a web site, because the text in Crowley's paper RSO is not a hyperlink.  The language on the RSO simply provides the directions to assist one in finding the Terms and Conditions located on the Crowley website.

18.     The RSO is a written paper form, not an electronic document.  The testimony of Crowley's engineering specialist, Ms. Pudwell also shows that it was Crowley's business practice to forward the RSOs to vendors by U.S. Mail and not electronically.  Crowley Ex. 62 at 11-15.

19.     The Court finds that a reasonable person could easily have accessed Crowley's website homepage by using the notice in the RSO.  In fact, simply by typing "www.crowley.com" into a web browser navigation bar, the Crowley website is displayed.  It is easily navigated.  Once on the Crowley homepage, there is a menu bar at the top of the page labeled clearly "Documents & Forms."  By clicking on "Documents & Forms" a drop down menu is presented containing "Vendor Relations." A click on "Vendor Relations" brings one to "Purchase Order Terms and Conditions."

The Court finds that after accessing the Crowley website, in as few as three mouse clicks, a user can find Crowley's Terms and Conditions.  The Court finds the notice is reasonable and gives one fair opportunity to locate the Terms and Conditions if one so desires.  As a result, the Court finds that Tubal-Cain had actual notice of the Crowley Terms and Conditions in this case.

20.     At trial, counsel for Crowley connected live with the Crowley website, www.crowley.com.  Once on Crowley's homepage, it took three clicks of the mouse to display the Terms and Conditions involved in this dispute.  This was also proved by counsel for One Beacon at the deposition of Crowley's Insurance Administrator, Kimberly Stotler.  Crowley Ex. 58 at 9-10.

21.     The Court finds this is reasonable notice and gave Tubal-Cain fair opportunity to locate and review the Terms and Conditions, had it chosen to do so.  As a result, the Court finds that Tubal-Cain had actual notice of the Crowley Terms and Conditions in this case.

22.     In this electronic age, both consumers and businesses navigate websites each day to locate items and information.  Rarely, if ever, does one find what one seeks on a website with one click.  Furthermore, the Court finds that in the shipyard repair industry, where contracts are often negotiated on the deck of vessels or in a shipyard trailer (as was the case at Tubal-Cain), the practice of placing terms and conditions on a website where anyone can access them, enlarge the font, print them, copy them or e-mail them to their counsel for review, makes sound business sense.  Websites can provide one with fair opportunity to review terms and conditions, as did the Crowley website in the case at bar.

*There Was No Disparity in Bargaining Power Between Crowley and Tubal-Cain*

23.     During the hearing on February 17, 2010, Tubal-Cain's counsel intimated that there was a disparity in bargaining power between the small "mom and pop" ship yard, Tubal-Cain, and

the large international company, Crowley.  Tubal-Cain offers no facts to support this purported disparity other than Tubal-Cain's counsel's conclusory argument.

24.     Tubal-Cain's president, Mr. Van Huis, has a degree in Business management and marketing from Mary Hardin Baylor University.  *See* Crowley Ex. 59 at 10.  Mr. Van Huis testified that when a contract came in, he and his father would review it with Tubal-Cain's CPA and corporate attorney.  *See* Crowley Ex. 59 at 25-26.  Tubal-Cain apparently did have a sophisticated procedure for reviewing contracts in place, but did not follow it in this case.  Mr. Van Huis never forwarded any of the Crowley RSOs to his corporate attorney to review. He never reviewed them with his father, his CPA, or his attorney.  *Id.*  Furthermore, Mr. Van Huis also had access to his insurance agent, Mr. Barry, who has over twenty years placing insurance in this field, and who testified that he provided advice to Mr. Van Huis regarding contracts and insurance policies required. *See* Crowley Ex. 60 at 130-133.  Mr. Barry was likewise not consulted.

25.     The Court finds that there was no relevant disparity in bargaining power between the parties.  Indeed, each party was apparently satisfied with the contractual arrangements.  Although Tubal-Cain reserved the right to "review all purchase orders prior to acceptance" on each of its invoices (Crowley Ex. 30), no objection to Crowley's Terms and Conditions as noted on the RSO was ever made by Tubal-Cain.

*The Defense and Indemnity Clause in the Crowley*
*Terms and Conditions is Clear and Unequivocal*

26.     The language in Clause 13 "Indemnity" of the terms and conditions (Crowley Ex. 26) is clear and unequivocal on its face.

27.     Under the general maritime law, an indemnity clause must clearly and unequivocally inform the indemnitor that it may be called upon to indemnify the indemnitee for the indemnitee's

sole negligence. *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 365 (5th Cir. 2009). Clause 13 stated, among other things, that the seller (Tubal-Cain) shall indemnify buyer (Crowley) for any injury including death "caused or occasioned by any defect in the goods or services or any act, omission, fault, negligence, or defect of any person, forum, corporation or other entity, including but not limited to, Seller, Buyer or anyone acting on their respective behalf, . . . even if the same be or is alleged to be, due to the sole active negligence of Buyer or anyone acting on its behalf." Crowley Ex. 26, cl. 13. The Court finds this indemnity clause to be clear and unequivocal on its face.

28.     This finding is supported by the testimony of Mr. Van Huis, who was asked to read Clause 13 at his deposition. He testified that he understood Clause 13 was a defense and indemnity clause that required the buyer to indemnify Crowley. He testified he reviews these types of clauses pursuant to his duties at Tubal-Cain. When asked if it was clear to him what Clause 13 was doing, he testified: "Yes." Crowley Ex. 59 at 107-08.

*Certificate of Insurance Issued to Crowley*

29.     Tubal-Cain instructed its insurance broker to send Crowley a Certificate of Insurance. Tubal-Cain's broker complied with this request. *See* Crowley Exs. 59, 60. The Certificate of Insurance is dated March 2, 2007 and identifies the One Beacon policy and Crowley as the certificate holder.

30.     The Endorsements listed on the Certificate of Insurance include: "Blanket Additional Insured and Waiver of Subrogation is provided as required by written contract. . . ." The Certificate of Insurance also contained the following language:

> This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage provided by the policies below.

*See* One Beacon Ex. 3. Tubal-Cain's insurance agent sent these Certificates of Insurance, not to the address printed on the RSOs, but to the address specified by Crowley's online Terms and Conditions at www.crowley.com:

> Crowley Maritime Corporation
> 9487 Regency Square Blvd.
> Jacksonville, FL 32225
> Fax: (904) 805-1639

*Compare* Crowley Exs. 27, 28, 29 *with* Crowley Ex. 26.

31.     At the conclusion of the work being performed on Barge MWB 403, Tubal-Cain issued an invoice to Crowley, referencing "RSO 9501229." Crowley Ex. 30. Item 18 of the Tubal-Cain invoice, describes the work being done by Parker at the time of his alleged accident, "repair all internal lighting & install (2) blower fans along with (2) new receptacles." This invoice also contained a clause at the bottom of the last page which indicated that Tubal-Cain reserved the right to object to any terms and conditions in any purchase order. *Id*.

32.     The Tubal-Cain invoice was approved and signed by Crowley port engineer Ricky Bastian. Tubal-Cain was paid $316,912.00. *Id.*

*One Beacon's Comprehensive Liability Coverage*

33.     One Beacon issued Comprehensive Insurance Policy Q5JH90055 (the Policy), effective February 23, 2007 to February 23, 2008, to Tubal-Cain. *Id.* The Policy contains a $1 million limit for each occurrence with an aggregate of $2 million.

34.     The policy defines an "insured contract" as follows:

"Insured contract" means:

* * *

f.      That part of any other written contract or written agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization . . . ."

* * *

Crowley Ex. 1, p. 25 of 30.

35.     Section IV of the Marine Comprehensive Liability Policy endorsement defines who is an insured. *Id.* at 14. The Policy includes an additional insured and waiver of subrogation endorsement which modifies the definition of "Who is an Insured" as defined in Section IV as follows:

**MARINE COMPREHENSIVE LIABILITY POLICY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED AND WAIVER OF SUBROGATION ENDORSEMENT**

**(SPECIFIC) (MCL 0295117)**

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Premium:    $ (included)**

In consideration of the additional premium shown in the schedule to this endorsement and subject to the terms and conditions of the policy, it is agreed that:

1.      Section IV of the policy (Who is an Insured) is amended to include **the person(s) or organization(s) shown below** as an Insured hereunder to the extent that you are obligated by an **"insured contract"** to include them as Additional Insured, but only with respect to "your work."

14

2.      We waive any right of recovery we may have against such **Additional Insured as shown below** because of payments we make for "bodily injury" or "property damage" arising out of "your work" done with that Additional Insured, but only to the extent of such obligation under the "insured contract".  The waiver applies only to the person(s) or organization(s) shown below:

>       **NAME AND ADDRESS**
>
>       **TO BE ADVISED**

3.      All Other Terms and Conditions Remain Unchanged.

(Crowley Ex. 1 at Endorsement MCL 0295117) (Emphasis Added).

36.      Neither Crowley nor any other party is specifically identified in the Policy as an additional insured.

## CONCLUSIONS OF LAW

### *Jurisdiction and Venue*

1.      This is an admiralty or maritime claim brought within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Supplemental Rules for Admiralty or Maritime Claims.

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1333.

3.      The general venue statute does not apply to admiralty actions. FED. R. CIV. P. 82. Venue is proper in this Court and this District because this Court has personal jurisdiction over Crowley.  *In re McDonnell-Douglas Corp.,* 647 F.2d 515, 516 (5th Cir. 1981).

### *The General Maritime Law Applies to the Contractual Dispute*

4.      An agreement to repair a vessel, such as the one forming the basis of this dispute, is a maritime contract.  *Alcoa S.S. Co. v. Charles Ferran & Co.,* 383 F.2d 46, 54-55 (5th Cir. 1967). The interpretation of this ship yard repair contractual dispute between Crowley and Tubal-Cain is resolved by application of the general maritime law of the United States.  *See, e.g.*, *Norfolk S. Ry.*

*Co. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 23-25 (2004); *N. Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co.*, 249 U.S. 119, 127 (1919).

5.    Maritime law must maintain its uniformity and it preempts any state law that conflicts with, or is contradictory to, the maritime law's purpose. *J. Ray McDermott & Co., Inc. v. Vessel Morning Star*, 457 F.2d 815, 818 (5th Cir.) (*en banc*), *cert. denied*, 409 U.S. 948 (1972); *see also IMTT-Gretna v. Robert E. Lee*, 993 F.2d 1193, 1195 (5th Cir. 1993).

*Texas Law Controls the Interpretation of One Beacon's Ocean Marine Policy*

6.    "Absent a specific and controlling federal rule, cases involving marine insurance contracts are governed by state law." *N. Amer. Specialty Ins Co. v. Debis Fin. Servs., Inc.*, 513 F.3d 466, 470 (5th Cir. 2007) (citing *Wilburn Boat Co.* v. *Fireman's Fund Ins. Co.,* 348 U. S. 310, 313 (1955); *Elevating Boats, Inc. v. Gulf Coast Marine, Inc.*, 766 F.2d 195, 198 (5th Cir. 1985)).  The parties do not dispute that state law governs this case.  Consequently, the Court will look to the law of Texas in interpreting the One Beacon policy.

*There Was a Written Contract Between Crowley and Tubal-Cain*

7.    The Parties do not dispute that a "contract" was in place between Crowley and Tubal-Cain.  Rather, they dispute whether the contract was written or oral.  The Court notes that it is customary in the ship yard industry for purchase orders and invoices to follow the initial oral agreement as to the work to be done.  *See, e.g., Alcoa S.S. Co.,* 383 F.2d at 55; *see also Frota Oceanica Brasileira S.A. v. M/V Alice St. Philip*, 790 F.2d 412, 417 n.8 (5th Cir. 1986).

8.    Further, the parties do not dispute that RSO 9501229 is a purchase order and a purchase order is a written contract.  *Campbell v. Sonat Offshore Drilling, Inc.,* 979 F.2d 1115, 1119-20 (5th Cir. 1992) (superseded by statute on other grounds); *Refinery Equip. v. Wickett Refining Co.*, 158 F.2d 710, 712 (5th Cir. 1947).

9.      Here, the indemnity and insurance provisions on Crowley's website never changed during the time Crowley was sending its vessels to Tubal-Cain for repairs.  Additionally, each of the RSOs Crowley sent to Tubal-Cain contained the same notice provision.  Finally, Tubal-Cain accepted each RSO without objection, and issued an invoice for each one, which Crowley paid.

10.     In the instant case, Tubal-Cain was given the opportunity to review, and had the right to refuse, Crowley's terms and conditions, but never did so.  Indeed, on page three of its invoice it expressly reserved the right to "review all purchase orders prior to their acceptance."  Crowley Ex. 30.  Tubal-Cain accepted all of Crowley's RSOs without objection.  Tubal-Cain ratified the prior course and conduct of the parties when it submitted its invoice for RSO 9501229.  This invoice was signed by Crowley port engineer Ricky Bastian and Crowley paid Tubal-Cain $316,912.00 for RSO 9501229.  *See* Crowley Ex. 30.

11.     This was not, as Tubal-Cain argues, simply an oral agreement followed up by a confirmation and later an invoice.  It was one transaction.  "Where parties share a history of business dealings and standardized provisions have become part of those dealings, such familiar terms within purchase orders issued after performance are binding where they are accepted without objection."  *Campbell*, 979 F.2d at 1120.  Consequently, the entire agreement constitutes a "written contract or agreement" and therefore meets the "insured contract" requirement as defined in the One Beacon Policy.

12.     One Beacon and Tubal-Cain argued at trial that the fact that a purchase order **and** subsequent invoice are separate documents, indicates there is no contract.  In its brief, One Beacon cited *Padilla v. LaFrance,* 907 S.W.2d 454 (Tex. 1995),  arguing that since the Crowley terms and conditions are on a separate document, the contract alleged by Crowley is "not a complete agreement within itself" and therefore not valid.  Doc. 43 at p. 27.  While this Texas Supreme Court case is not

binding on a court interpreting a maritime contract, the *Padilla* court's holding actually supports Crowley's position. *Padilla v. LaFrance* involved an attempt to enforce a settlement agreement that consisted of a series of letters between the attorneys in the case. The Court enforced it holding: "We hold that the series of letters between [three attorneys] constitute an agreement in writing under Rule 11." *Padilla v. LaFrance* at 460. This was so, even though each letter modified in part, the original agreement. Focusing solely on the RSO, One Beacon argues there is no contract as the terms "do not set out what services are to be rendered, what work is to be done, the time or location for performance or the price to be paid or any other consideration." Doc. 43 at 27. When one reviews the Crowley RSO (purchase order) and the Tubal-Cain invoice based upon that purchase order, all of these items are specifically laid out and agreed to. There were never any objections raised to any of the 24 RSO's or invoices by Tubal-Cain or Crowley. In the case at bar, as in *Padilla,* the documents taken in their totality form a binding, written contract or agreement.

*Crowley is Not an Additional Insured Under the One Beacon Policy*

13.     "Under Texas law, additional insureds are strangers to an insurance policy and must bear the burden of proving additional insured status." *Rep. Waste Servs. v. Empiare Indem. Ins. Co.*, 98 Fed. Appx. 970, 971 (5th Cir 2004) (citing *Rep. Nat'l Bank of Dallas v. Nat'l Bankers Life Ins. Co.*, 427 S.W.2d 76, 80 (Tex. App–Dallas 1968, writ ref'd n.r.e.)).

14.     The Additional Insured endorsement requires Crowley to establish both: (1) that it was specifically identified in the endorsement as an additional insured; and (2) that Tubal-Cain was obligated by an "insured contract" to include Crowley as an additional insured. The Court finds that there was an "insured contract" between Crowley and Tubal-Cain that required Tubal-Cain to name Crowley as an additional insured on the One Beacon policy.

15.     Crowley suggests that, despite the plain language of the endorsement, it is not required to be specifically identified.  In support of this argument, Crowley relies on language from two Texas state court opinions generally describing the semantic difference between an "additional insured" and an "additional named insured."  (Crowley's brief at 37).  Crowley's reliance on this distinction is misplaced.  As explained by the Austin Court of Appeals in *Western Indemnity Insurance Co. v. American Physicians Insurance Exchange*:

> Both the terms "additional insured" and "additional named insured" have clear technical meanings.  An additional insured is a party protected under an insurance policy, but who is not named within the policy.  A common example of an additional insured is a person who, although not specifically named, is covered under a liability policy by a definition of "insured" that extends protection to interests, strictly according to a status, such as employees or common members of a household.  On the other hand, an additional named insured is a person or entity specifically named in the policy as an insured subsequent to the issuance of the original policy.

950 S.W.2d 185, 188-89 (Tex.App.–Austin 1997, no writ).

Following the Austin Court of Appeals' reasoning, the following unnamed individuals or entities would generally qualify as additional insureds (as opposed to additional named insureds) under the subject Policy: Tubal-Cain's executive officers and directors; Tubal-Cain's employees; any person acting as Tubal-Cain's real estate manager; any person driving mobile equipment registered to Tubal-Cain along a public highway with Tubal-Cain's permission; any organization newly acquired or formed by Tubal-Cain, other than a partnership or joint venture.  (Crowley Ex. 1, Section IV).  Crowley does not satisfy any of these categories of additional insureds that are not required to be specifically named by virtue of their status.  The specific language of the One Beacon policy, which is not ambiguous, requires that Crowley be specifically named in the policy to be an additional insured.  But, Crowley is not specifically named on the One Beacon policy.

16.     Therefore, this Court concludes that Crowley is not an additional insured under the policy.

<em>Four Point Font is Acceptable in Maritime Contracts</em>

17.     One Beacon cites *Littlefield v. Schaefer*, 955 S.W.2d 272, 274-75 (Tex. 1997) for the proposition that terms and conditions in four-point font is per se inconspicuous, and thus unenforceable, as a matter of law.  One Beacon's "four point font" argument fails because it wrongly assumes Texas law supplies the appropriate rules of contract interpretation.  While the insurance policy at issue may be interpreted by Texas law under *Wilburn Boat*, a ship repair contract is interpreted under the general maritime law which has no prohibition against "four point font."  The parties have agreed that the repair contract was a maritime contract. It must be interpreted under the general maritime law.  One Beacon's argument also mischaracterizes Texas law.  A release is conspicuous under Texas law "when it is so written that a reasonable person against whom it is to operate ought to have noticed it."  TEX. BUS. & COM. CODE § 1.201(10).  Although the U.C.C. indicates some methods of making a term conspicuous (*e.g.*, all capital letters, larger font, contrasting type or color), the "test is whether attention can reasonably be expected to be called to it."  *Id.* at cmt. 10; *Littlefield*, 955 S.W.2d at 275.  This definition clearly takes into account the relative bargaining position of the two parties.  Because this Court finds Tubal-Cain was a sophisticated commercial entity, its bargaining position was not similar to the "novice motorcycle rider" who signed the release in *Littlefield*.  This Court also concludes that Crowley's Terms and Conditions were reasonable, unlike the Terms and Conditions in *Littlefield*, because the Crowley Terms and Conditions are in fact legible.  And although four-point font is small, Crowley's electronic format permits the reader to readily expand the text with the document viewing software's

zoom function.  The pre-printed release in *Littlefield*, by contrast, had been photocopied so many times it would have been illegible even under magnification.

18.     When interpreting a contract under the general maritime law, a district court may not look to inconsistent state law contract principles.  Because the Texas Legislature has adopted restrictions on indemnity provisions inconsistent with the general maritime law, this Court may not look to those cases when interpreting the maritime contract before it.  Instead, the Court must follow the general contract principles applied to small point font in adhesion contracts.  On the issue of small typeface, the Fifth Circuit has noted:

> a contract is one of adhesion when either its form, print, or unequal terms call into question the consent of the non-drafting party and it is demonstrated that the contract is unenforceable, due to a lack of consent or error which vitiates consent.  Accordingly, even if a contract is standard in form and printed in small font, if it does not call into question the non-drafting party's consent and if it is not demonstrated that the non-drafting party did not consent or his consent is vitiated by error, the contract is not a contract of adhesion.

*Brown v. Pac. Life Ins. Co.*, 462 F.2d 384, 397 (5th Cir. 2006) (citing *Aguillard v. Auction Mgmt. Corp.*, 908 So.2d 1, 10-11 (La. 2005)).  Again, the inquiry turns, not on font size, but whether it is reasonable to enforce the agreement as written.  Because the contracting parties were sophisticated commercial entities and the Crowley Terms and Conditions were sufficiently legible and accessible, the Court concludes that small font is not unconscionable as a matter of law.  In addition, as noted above, the font size could be enlarged on the computer.

19.     The Court also notes that it is customary for Ocean Bills of Lading, which are also maritime contracts, to contain terms and conditions in four-point font, or less.  They are enforced by the Courts regularly and neither party in this case has offered <u>any</u> general maritime authority to the contrary.

*Crowley Provided Fair Opportunity to Review*
*The Terms and Conditions Located on its Website*

20.     Reasonable notice is sufficient to put contracting parties on notice of binding terms

and conditions.  *See, e.g., Coastal Iron Works, Inc. v. Petty Ray Geophysical,* 783 F.2d 577, 583 (5th

Cir. 1986).   And, "maritime contracts may validly incorporate by reference terms from other

documents or agreements."  *New Moon Shipping Co., Ltd. v. MAN B&W Diesel AG*, 121 F.3d 24,

30 (2d Cir. 1997) (citing 4 WILLISTON ON CONTRACTS § 628, at 903–04 (3d ed. 1961).  The Court

finds the Notice of the Terms and Conditions located on each of the Crowley RSOs sent to Tubal-

Cain for prior jobs and for this job to be reasonable.

21.     The terms included on Crowley's website were incorporated by reference in

Crowley's Repair Service Order ("RSO").  The Crowley RSO plainly and conspicuously states that

the order is subject to Terms and Conditions listed on Crowley's website.  *See* Exs. 3–25.

Additionally, Mr. Van Huis admitted he is internet savvy and could easily have checked for the

online Terms and Conditions.  *See* Ex. 58 at 100:15-101:21.

22.     Even though Mr. Van Huis did not visit the website, he is still bound by the terms and

conditions that are conspicuously referenced in the Crowley RSO.  *See In re Prudential Ins. Co. of

Amer.*, 148 S.W.3d 124, 134 (Tex. 2004); *Rosales v. Lore*, 149 Fed. Appx 245, 247 (5th Cir. 2005)

("Texas law . . . provides that a party to a contract is presumed to have read and understood its

terms."); *see also* 27 WILLISTON ON CONTRACTS § 70:113 (4th ed. 2009) ("[I]gnorance through

negligence or inexcusable trustfulness will not relieve a party from contract obligations.  One who

signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of

another contracting party, is conclusively presumed to know its contents and to assent to them.").

*Ratification of the Terms and Conditions by Tubal-Cain*

23.     The Court finds that the prior conduct of Tubal-Cain and Crowley constitute a course of dealing which ratifies Crowley's Terms and Conditions.   Under the Restatement (Second of Contracts) "course of dealing" is defined as:

(1)     A course of dealing is a sequence of previous conduct between the parties to an agreement which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.

(2)     Unless otherwise agreed, a course of dealing between the parties gives meaning to or supplements or qualifies their agreement.

RESTATEMENT (SECOND) OF CONTRACTS, § 223, Course of Dealing.  Similarly, "where parties share a history of business dealings and standardized provisions have become part of those dealings, such familiar provisions . . . are binding if accepted without objection." *Campbell,* 979 F.2d at 1120.

24.     In each of the eight jobs prior to the job on which Mr. Parker was allegedly injured, Tubal-Cain received identical notice of, and had fair opportunity to review, the Crowley Terms and Conditions.  Given the course of dealings between Tubal-Cain and Crowley, the Court also finds that the notice of the Terms and Conditions on Crowley's RSOs was reasonable.  On its invoices, Tubal-Cain specifically reserved in writing the right to object to the RSO containing the notice of Terms and Conditions, but never objected. Tubal-Cain is therefore bound by Crowley's Terms and Conditions.

*Assuming <u>Arguendo</u>, an Oral Contract Existed,*
*Tubal-Cain Must Indemnify and Defend Crowley*

25.     The Court has found a written contract existed.  Both One Beacon and Tubal-Cain maintain there was an oral agreement for the repairs to the MWB 403.  The Court finds, in the alternative, that if the agreement was oral, Tubal-Cain is still required to indemnify and defend Crowley and name Crowley as an additional insured pursuant to the Terms and Conditions

incorporated by reference in RSO 9501229.  Maritime law upholds the validity of oral contracts. *Kossick v. United Fruit Co*., 365 U.S. 731, 734, 81 S.Ct. 886 (1961); *Fuesting v. Lafayette Parish Bayou Vermilion Dist*., 470 F.3d 576, 580 (5th Cir. 2006).   The Court has found that Tubal-Cain had notice of the Crowley Terms and Conditions.  Clause 2 of those terms specifically states that they apply to any oral agreements upon which the purchase order (which Tubal-Cain accepted) is based.  Crowley Ex. 25 at Clause 2.  Thus, even if the contract was an oral, rather than a written contract, Tubal-Cain is required contractually to defend and indemnify Crowley and also to procure insurance coverage.  *See* Clauses 13 and C(4) respectively of Crowley's Terms and Conditions. Crowley Ex. 25.

If any of the foregoing Findings of Fact is more properly a Conclusion of Law, it is adopted as such.  If any of the foregoing Conclusions of Law is more properly a Finding of Fact, it is adopted as such.

## CONCLUSION

Based upon these findings of fact and conclusions of law, the Court finds in favor of One Beacon on Crowley's claim for insurance coverage under One Beacon's policy.  One Beacon has no duty to defend or provide insurance coverage to Crowley for any claims that have been asserted or that could be asserted, against Crowley in *Marcus Parker v. Tubal-Cain Marine Services, Inc., et al*, No. A-09179775 (58th Dist. Ct., Jefferson County, Tex.) and *In the Matter of the Complaint of HMC Leasing, Inc., et al as Owners/Owner Pro Hac Vice of Barge MWB403 for Exoneration from and or Limitation of Liability*, C.A. No. 1:08-cv-00289 (E.D. Tex.) (hereinafter collectively referred to as "the limitation action").

Additionally, the court finds in favor of Crowley on its claims for contractual defense and indemnity and breach of contract for failing to obtain insurance coverage against Tubal-Cain. Crowley's fraud and negligent misrepresentation claims are dismissed with prejudice.

Signed at Houston, Texas on April 12, 2010.

_____

Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY

25