UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ONE BEACON INSURANCE COMPANY, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION H-08-2059 |
| § | |
| CROWLEY MARINE SERVICES, INC., § | |
| § | |
| *Defendant*. § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court are the following motions: (1) Crowley Marine Services, Inc's ("Crowley") motion to amend the May 14, 2012 final judgment pursuant to Rule 59 of the Federal Rules of Civil Procedure ("Crowley's motion") (Dkt. 90); (2) Tubal-Cain Marine Services, Inc.'s ("Tubal-Cain") motion to add or amend findings of fact and conclusions of law supporting the court's May 14, 2012 final judgment (the "motion to add") (Dkt. 91); and (3) Tubal-Cain's motion to alter or amend the court's May 14, 2012 final judgment (the "motion to alter") (Dkt. 92). After reviewing all post-remand briefing, pleadings, record, and applicable law, the court **VACATES** its May 3, 2012 order granting attorneys' fees (Dkt. 84) and its May 14, 2012 final judgment (Dkt. 86). This memorandum opinion and order is substituted in place of the May 3, 2012 order, with a final judgment to follow after a short discovery period, as discussed in Part III.C, *infra*. Further, Tubal-Cain's motion to exclude evidence (Dkt. 81) is **DENIED**, and Crowley's motion (Dkt. 90) and Tubal-Cain's motion to add and motion to alter (Dkts. 91–92) are **DENIED AS MOOT**.

## I. BACKGROUND

This case has a long history, and the court will recount only the facts necessary to the instant dispute over attorneys' fees. Crowley owns and operates a large fleet of vessels including tugs, tankers, and specialty offshore work barges. Dkt. 52 at 3 ¶ 1. Tubal-Cain performs ship repair work at its fabrication and dry dock facility in Port Arthur, Texas. *One Beacon Ins. Co. v. Crowley Mar. Servs.*, 648 F.3d 258, 261 (5th Cir. 2011). In March 2007, Crowley hired Tubal-Cain to perform work on one of Crowley's vessels. *Id.* On April 23, 2007, Marcus Parker, an employee of one of Tubal-Cain's subcontractors, was repairing and replacing the lighting in the machinery space of the vessel and was allegedly injured. Dkt. 52 at 3 ¶ 2. Parker sued Tubal-Cain and Crowley in Texas state court, alleging that their negligence proximately caused his injuries. *Id.*; *Marcus Parker v. Tubal-Cain Mar. Servs.*, Cause No. A-0179775, in the 58th Judicial District Court of Jefferson County, Texas.

Crowley made a formal demand for defense and indemnity from Tubal-Cain for any liability or expense incurred as a result of Parker's suit, and sought coverage from One Beacon Insurance Company ("One Beacon") as an additional insured under the Maritime Comprehensive Liability Policy that One Beacon issued to Tubal-Cain (the "Policy"). *One Beacon*, 648 F.3d at 261. One Beacon denied coverage and filed this declaratory judgment action, seeking a declaration that Crowley was not entitled to coverage as an additional insured under the Policy. *Id.* One Beacon claimed that it had not received a request from Tubal-Cain to add Crowley as an additional insured on the Policy, thus precluding coverage. *Id.*

Crowley impleaded Tubal-Cain, alleging that the contract between those parties required Tubal-Cain to defend and indemnify Crowley against any personal injury claims brought by Tubal-Cain's employees or subcontractors. Dkt. 14 (Crowley's third-party complaint) at 5 ¶¶ 2–3.

Crowley also alleged that the terms and conditions required Tubal-Cain to carry various insurance policies naming Crowley as an additional insured. *Id.* at 5–6 ¶¶ 4–5. In the alternative, Crowley asserted a claim against Tubal-Cain for fraud and negligent misrepresentation, alleging that Tubal-Cain had falsely led Crowley to believe that it had obtained insurance coverage. *Id.* at 6 ¶¶ 6–8. As part of its damages, Crowley claimed that Tubal-Cain should indemnify Crowley for its attorneys' fees, costs, and expenses related to the coverage case and the underlying litigation. *Id.* at 7 ¶ 9.

In October 2009, the parties agreed to try the case to this court by written submission. Dkts. 35–36. Crowley requested in its trial brief that the court hold a hearing on the reasonableness and necessity of its attorneys' fees if Crowley prevailed on its claims. Dkt. 42 at 53. Tubal-Cain did not object to this request. On April 12, 2010, the court issued its findings of fact, conclusions of law, and final judgment. Dkts. 52–53. The court held that Crowley did not qualify as an additional insured under the Policy and entered judgment in favor of One Beacon on its declaratory judgment claim. Dkt. 52 (Findings of fact and conclusions of law) at 25. As to Crowley's third-party complaint, the court dismissed Crowley's fraud and negligent misrepresentation claims against Tubal-Cain. *Id.* Finally, as to Crowley's contract claim, the court held that Tubal-Cain was bound to procure insurance and indemnify Crowley, as set forth in Crowley's "Terms and Conditions for Purchase Order Agreements" (the "Terms and Conditions"),[1] and failed to do so. *Id.* The relevant indemnification and insurance clauses from the Terms and Conditions are as follows:

**[Clause A(13)]**. **Indemnity:** To the extent permitted under law, Seller shall indemnify, save harmless and defend Buyer from and against any and all suits, legal proceedings, claims, demands, damages, costs and *expenses of whatsoever kind or character (including, but not limited to, reasonable attorney's fees and expenses) arising out of any injury (including death) or damage to any persons or property in any manner*, caused or occasioned by any defect in the goods or services or any act, omission, fault, negligence or default of any person, firm, corporation or other entity

---

[1] The Terms and Conditions were available on Crowley's website at www.crowley.com.

3

(including, but not limited to, Seller, Buyer or anyone acting on their respective behalfs), *in connection with or incident to this Order or work to be performed hereunder*, even if the same be, or is alleged to be, due to the sole active negligence of Buyer or anyone acting on its behalf.

\*\*\*

**[Clause C(4) - Insurance]** The coverages afforded to Crowley as an additional insured shall at least be equal to the coverages afforded the Contractor *under such policies* and shall in all respects include coverages for the obligations of Contractor under this Agreement.

\*\*\*

Should Contractor fail to procure or maintain any of the aforesaid insurance coverages, or by any act or omission, vitiate or invalidate any of the aforesaid insurance coverages, Contractor shall indemnify Crowley and the other beneficiaries of said insurance *to the extent* they or any of them suffers or incurs loss, damage, liability or expense *in consequence of* such failure, act or omission.

Dkt. 42, Ex. 26 at 1–2 (emphases added).

Moreover, although the court found in Crowley's favor "on its claims for contractual defense and indemnity and breach of contract," the court did not specify the scope or quantum of Crowley's recoverable attorneys' fees. Dkt. 52 at 25. On June 9, 2010, Tubal-Cain appealed the final judgment to the Fifth Circuit Court of Appeals, and Crowley cross-appealed the following day. Dkts. 61–62. Crowley did not move for a determination of attorneys' fees during the pendency of the appeal, thus leaving the amount of attorneys' fees owed to Crowley as an unresolved issue.

Then, on July 28, 2011, the Fifth Circuit affirmed this court's April 2010 decision in all respects. *See One Beacon*, 648 F.3d at 261. However, the Fifth Circuit remanded the case to the district court "for a determination of Crowley's entitlement, if any, to attorneys' fees in this case." *Id.* at 272. On remand, this court ordered briefing on the issue of attorneys' fees. Dkt. 76. And in addition to the parties' briefs on the issue, Tubal-Cain moved to exclude Crowley's fee evidence on grounds that it was not timely provided to Tubal-Cain during the pretrial discovery period. Dkt. 81 at 1–2. These matters are now ripe for decision.

## II. GOVERNING LAW

The interpretation of a contractual indemnity provision is a question of law for the court to decide. *Becker v. Tidewater, Inc.*, 586 F.3d 358, 369 (5th Cir. 2009). Here, the parties agree that relevant indemnity provisions are governed by maritime law. *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986); Dkt. 77 at 3; Dkt. 79 at 12. In the Fifth Circuit, a maritime indemnity agreement should be read as a whole and its words given their plain meaning unless the provision is ambiguous. *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 955 (5th Cir. 1984). An indemnity provision should "cover all losses 'which reasonably appear to have been within [the parties'] contemplation.'" *Kemp v. Gulf Oil Corp.*, 745 F.2d 921, 924 (5th Cir. 1984) (quoting *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. Unit A Aug. 1981)). And when determining the intent of the parties regarding the scope of recoverable attorneys' fees, the court should apply the general principle that "[a] contract of indemnity includes the obligation to pay the costs and attorneys' fees of the indemnitee against the third party, but [does not include] the right to costs and fees in connection with establishing the right to indemnification unless expressly stated." *Jones v. Francis Drilling Fluids, Ltd.*, 642 F. Supp. 2d 643, 671 (S.D. Tex. 2009) (Rosenthal, J.) (internal quotation marks omitted); *see also Nathaniel Shipping, Inc. v. Gen. Elec. Co.*, 920 F.2d 1256, 1268 (5th Cir. 1991) (explaining that under maritime law, "indemnification for attorney's fees [ar]e recoverable as foreseeable damages . . . for the costs of defending against a claim by a third party," but are not presumed to "extend to recovery of fees for litigation against the party in breach to actually determine liability."). This distinction is crucial because, in the absence of an express provision, fees incurred in a coverage action "are not by their nature a part of the claim indemnified against," but instead are "costs incurred in suing for a breach of contract, to wit, the failure to indemnify." *Peter Fabrics, Inc. v. S.S. Hermes*, 765 F.2d 306, 316 (2d Cir. 1985).

### III. ANALYSIS

Crowley seeks indemnity from Tubal-Cain for its attorneys' fees related to the coverage and underlying cases, and Crowley seeks indemnification for its fees under the indemnity (Clause A(13)) and insurance (Clause C(4)) provisions of its Terms and Conditions. The court will analyze Crowley's indemnification rights related to the coverage and underlying cases in turn. The court will then evaluate Tubal-Cain's motion to exclude Crowley's evidence in support of attorneys' fees.

### A. The Coverage Case[2]

#### *1. The Indemnity Clause (A(13))*

Crowley argues that its attorneys' fees in the coverage case should be indemnified under the general indemnity clause (A(13)) for several reasons. First, Crowley argues that under maritime law, it should be made whole as part of Tubal-Cain's indemnification obligation, and this compensatory goal includes attorneys' fees incurred in establishing its right to indemnity. Dkt. 77 at 7 (citing *Becker*, 586 F.3d at 375). Second, Crowley argues that Clause A(13) provides indemnification for claims "of whatsoever kind or character," which Crowley considers to be "expansive phrasing" that includes attorneys' fees incurred in the coverage case. *Id.* at 7–8. Tubal-Cain responds that maritime indemnity contracts are construed against the drafter, and Crowley should not recover its attorneys' fees expended in litigating its right to indemnification. Dkt. 79 at 12–16. For reasons explained below, the court holds that Clause A(13) is limited to indemnification coverage for certain claims brought by third-parties for personal injury or property damage against Crowley, but does not extend to litigation for enforcement of the indemnification right.

---

[2] The court's reference to the "coverage case" or "coverage litigation" includes all claims in this litigation, including One Beacon's declaratory judgment claim and Crowley's third-party claims against Tubal-Cain.

Regarding Crowley's first argument, that indemnification clauses should include attorneys' fees as recoverable expenses, this is generally a true statement, but indemnified attorneys' fees generally do not extend to coverage cases absent an explicit clause to that effect. The case that Crowley cites for the general proposition, *Becker v. Tidewater Inc.*, does not support Crowley's view that fees in a coverage case are routinely recoverable through an indemnification contract. *See Becker*, 586 F.3d at 375 ("Although a general indemnification provision typically includes recovery of attorneys' fees incurred in defending against a claim covered by the indemnity provision, 'the indemnitee enjoys no right to recover its legal fees incurred in establishing its right to indemnification.'") (quoting *Dow Chem. Co. v. M/V ROBERTA TABOR*, 815 F.2d 1037, 1046 (5th Cir. 1987)). Accordingly, Crowley's fees in the coverage case are not recoverable under a general indemnity clause. Crowley's right to indemnity, if any, must derive from other language.

Crowley attempts to find this language in what it terms the "expansive phrasing" of the indemnity clause. Dkt. 77 at 7–8. The indemnity clause in Crowley's Terms and Conditions contains three key sections. First, Clause A(13) defines the general financial events for which Crowley can obtain indemnification, namely for "any and all suits, legal proceedings, claims, demands, damages, costs and expenses *of whatsoever kind or character (including, but not limited to, reasonable attorney's fees and expenses)*." Dkt. 42, Ex. 26 at 1 § A(13) (emphasis added). Second, those reimbursable events are limited by the nature of claims specified in the next clause, as indemnified events must "aris[e] out of any injury (including death) or damage to any persons or property in any manner." *Id.* Lastly, to receive indemnification, the financial events arising out of personal or property damage must be "in connection with or incident to this Order or work to be performed hereunder." *Id.*

7

Crowley primarily focuses on the broad phrasing found in the first clause, which contains the phrase "of whatsoever kind or character." In *Sumrall v. Ensco Offshore Co.*, 291 F.3d 316, 320 (5th Cir. 2002), the Fifth Circuit held that the indemnification clause in the agreement at issue, with similar phrasing, extended to contractual obligations. In that case, Santa Fe Energy Resources, Inc. ("Santa Fe") was the operator of an offshore drilling rig jack-up vessel owned by Ensco Offshore Company ("Ensco"). *Id.* at 317. Santa Fe's contractor, Premiere, Inc. ("Premiere"), provided casing and other services to Santa Fe on the drilling rig. *Id.* In late September 1999, a crane operator swung the basket of a crane carrying Rodney Sumrall, a Premiere employee, into a pole and knocked Sumrall onto the rig. *Id.* Sumrall filed a tort suit in federal court against multiple parties, which ultimately led to coverage litigation among the contractors and subcontractors regarding the scope of their respective indemnity agreements. *Id.* As to the Premiere-Santa Fe agreement, the court held that Santa Fe was entitled to be indemnified for suits from third parties arising out of tort *and* contract, as that agreement covered "*all causes of action of whatsoever nature or character . . .* and whether arising out of contract [or] tort . . . whether or not caused by the . . . *breach of contract, or legal duty of [Santa Fe]*." *Id.* at 318 n.4 (emphases added); *id.* at 320. Because of that clause's "additional, rather expansive, language" and references to contract obligations, the court concluded that "Premiere owes indemnification to Santa Fe in the instant case for Santa Fe's contractual or legal duty to indemnify Ensco against Sumrall's injury claim." *Id.* at 320.

Here, although Crowley points to the expansive phrasing in the *Sumrall* agreement to support its construction of the indemnity clause in the Terms and Conditions, Dkt. 77 at 8, *Sumrall* is readily distinguishable and does not control. While both clauses contain the broad phrase "of whatsoever nature or character," the *Sumrall* provision's whatsoever language modifies the phrase "causes of action" and contains additional language referencing contract claims brought by third parties, to

8

which Premiere owed an indemnity obligation to Santa Fe. *Sumrall*, 291 F.3d at 320. Here, the whatsoever phrase modifies the term "expenses" only, a conclusion bolstered by the parenthetical phrase "including, but not limited to, reasonable attorney's fees and expenses" immediately following the whatsoever language. Thus, whereas in *Sumrall* the court concluded that contract claims were included in an indemnification clause that covered "*causes of action of whatsoever kind or character*," and because the claims arose from a breach of Santa Fe's "legal duty," the expansive phrasing in this case is limited to broadening the scope of recoverable expenses to include reasonable attorneys' fees, but the language does not expand the *nature* of cases for which attorneys' fees are recoverable.[3]

The limited nature of claims for which fees are recoverable is the subject of the other two key clauses in the indemnification provision. Indemnification in Clause A(13) is limited to those claims "arising out of" personal or property damage "in connection with or incident to this Order or work to be performed hereunder." Dkt. 42, Ex. 26 at 1 § A(13). Crowley contends that this coverage case "aris[es] from a personal injury," presumably because One Beacon brought the declaratory judgment action in response to Marcus Parker's personal injury suit in Texas state court relating to his alleged injuries suffered at the Crowley worksite. However, language akin to the phrases "arising out of" and "in connection with" has not been interpreted so broadly in the Fifth Circuit. *See, e.g.*, *Becker*,

---

[3] By contrast, this court recently construed an indemnity provision's "expansive phrasing" to expand the class of covered claims under the indemnity agreement. *See Energy XXI, GoM, LLC v. New Tech Eng'g, L.P.*, 787 F. Supp. 2d 590 (S.D. Tex. 2011) (Miller, J.). The clause in *Energy XXI* indemnified "all such claims . . . in anywise arising out of or incident to work being performed on Energy XXI's property . . ., even though occasioned, brought about, caused by, arising out of or resulting from Energy XXI's work, . . or by or from any other means, relationship or cause, *without limitation whatsoever*." *Id.* at 605 (emphasis added). This court held that contract claims were subject to indemnity through this clause "due to the expansive language used with the clause and the lack of limiting language." *Id.* at 607. The expansive language in the instant case addresses the scope of recoverable expenses, and the indemnity provision here contains limiting language, not present in *Energy XXI*, regarding the nature of claims for which indemnification is owed. The court's expansive construction of the indemnity clause in *Energy XXI* is therefore inapplicable to the instant agreement.

9

586 F.3d at 375 (precluding coverage cases from the scope of a clause that indemnified "damages as a result of such illness, injury, or death"); *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 955 (5th Cir. 1984) (concluding that fees incurred in pursuing indemnification itself were not covered by a clause reaching "all claims, demands, and causes of action of every kind and character (including cost of defense) for injury to or death of all persons who are not employees of Company"); *Corbitt*, 654 F.2d at 333 (providing for indemnity "against all claims, suits, liabilities and expenses on account of personal injury . . . arising out of or in connection with performance of this Order . . ."); *Jones*, 642 F. Supp. 2d at 671 (indemnified expenses include "all costs, losses, liabilities, . . . judgments and awards of every kind and character, . . . arising in connection herewith").

In *Jones*, the court found that because the indemnification right was limited to all cases "in connection []with" the subcontractor's work for the contractor at the worksite, the indemnity clause did not extend to coverage cases and was "'more naturally construed as referring to legal expenses incurred in defending against the primary claim.'" *Jones*, 642 F. Supp. 2d at 673 (quoting *Hermes*, 765 F.2d at 316). Similarly, the indemnity language in this case refers to personal and property damages, without a specific reference to damages as a result of a breach of contract. Further, the "in connection with" clause requires a link between the personal or property damages and the goods or services provided. Dkt. 42, Ex. 26 at 1 § A(13).[4] Based on this construction of section A(13) of

---

[4] In a supplemental brief in support of its motion to amend, Crowley drew the court's attention to a recent Fifth Circuit case construing a "broad" indemnity clause. Dkt. 102 (citing *Chevron USA, Inc. v. Aker Mar., Inc.*, 689 F.3d 497, 506 (5th Cir. 2012)). In *Aker*, Chevron U.S.A., Inc. ("Chevron") hired Aker Maritime, Inc. ("Aker") in 1998 to provide design and engineering services for the construction of a riser system on an offshore oil drilling facility (the "Genesis Spar facility") in the Gulf of Mexico, 150 miles south of New Orleans, Louisiana. *Id.* at 499. Serious stability problems arose on the riser system after completion, and Chevron asked Oceaneering International, Inc. ("Oceaneering") to repair the hull pursuant to the Chevron-Oceaneering Master Services Agreement (the "MSA"), which predated the Genesis Spar facility. *Id.* Oceaneering completed the initial repairs, but Chevron turned to Aker for a permanent fix, under Oceaneering's general supervision. *Id.* Aker ordered certain carriage bolts to keep the riser system together, and after a series of substitutions among certain subcontractors, the ultimate bolts used were different from the original order. *Id.* at 499–500. As Oceaneering maintained overall responsibility for riser repairs, Oceaneering received the shipment of the incorrect bolts. *Id.* at 500. Oceaneering's employees accepted the bolts without noticing the substitution, however,

10

Crowley's Terms and Conditions, the court holds that section A(13) provides indemnification to Crowley for attorneys' fees arising from its defense of primary claims brought by third parties for personal and property damage relating to goods and services obtained through its purchase order process. Section A(13) does not permit recovery of Crowley's attorneys' fees related to its prosecution and defense of claims in the coverage case, as these claims "are not by their nature a part of the claim indemnified against," and instead are costs incurred in litigating a breach of "the failure to indemnify." *Hermes*, 765 F.2d at 316.[5] Crowley's recovery of fees for the coverage case, if any, turns on the scope of Clause C(4)—the insurance clause—which the court now analyzes.

### *2. The Insurance Clause (C(4))*

There are two sections of Clause C(4) relevant to attorneys' fees incurred in the coverage case. First, the last sentence of the sixth paragraph of Clause C(4) reads as follows: "The coverages

---

and consequently applied too much torque to Grade 2 bolts that it believed to be Grade 5 bolts. Aker took over riser construction in 2001, and like Oceaneering's employees, Aker's employees failed to detect the bolt substitution. *Id.* During an underwater inspection in July 2002, Chevron discovered that the heads of several bolts had detached and had to be replaced. *Id.* Chevron then sued Aker and Oceaneering in the Eastern District of Louisiana in July 2003. *Id.* A jury found all defendants to be negligent and apportioned fault among them. *Id.* Aker was found to be 35% at fault, while Oceaneering was found to be 5% at fault. *Id.* The Fifth Circuit ultimately found that Oceaneering was liable to Aker for its attorneys' fees under the MSA's "broad" indemnity provision. *Id.* at 506. The Fifth Circuit held that the MSA obliged Oceaneering to indemnify Aker for its fees "resulting directly or indirectly" from covered loss or damage. *Id.*

Crowley contends that this "indirectly" language should inform the court's construction of the indemnity provisions in this case. The court disagrees. First, *Aker* is of limited precedential value because the court applied Louisiana, not maritime, law to the indemnity agreement, and Aker admitted in the district court that it "cannot recover amounts expended in pursuit of contractual indemnity from Oceaneering." *Chevron USA, Inc. v. Aker Mar., Inc.*, No. 03-2027, 2011 WL 999253, at *2 (E.D. La. Mar. 17, 2011). Second, even when applying general principles of contract construction, the term "indirectly" in the MSA broadened indemnity coverage to the entire litigation over the negligent repairs to the riser system, of which Oceaneering was at least indirectly involved throughout the entire repair process in 2000 and 2001. This broad interpretation of Oceaneering's substantive involvement in the underlying repairs, which was the core of the indemnification action, expands the scope of the primary claim indemnified against. Aker was not seeking indemnification for its fees expended in determining its right to indemnification, as the clause does not support a construction that broad. *Aker* is thus consistent with Fifth Circuit law on the scope of the indemnification right, and does not provide additional support for Crowley's arguments in this case.

[5] Because One Beacon's declaratory judgment claim and Crowley's fraud and negligent misrepresentation claims in the coverage case all arose from the dispute over Crowley's indemnification rights, and not from personal or property damage in connection with a repair service order, these claims are not subject to any right to indemnification under the court's analysis.

11

afforded to Crowley as an additional insured shall at least be equal to the coverages afforded [Tubal-Cain] under such policies . . . ." (the "minimum coverage clause"). Dkt. 42, Ex. 26 at 2 § C(4). Second, the eighth paragraph of Clause C(4) provides that "[Tubal-Cain] shall indemnify Crowley and the other beneficiaries of said insurance to the extent they or any of them suffers or incurs loss, damage, liability or expense in consequence of" the failure to procure insurance coverage (the "procurement clause"). *Id.* Crowley argues that under the minimum coverage clause, because Crowley contracted for insurance coverage that was coterminous with that of its contractors, including Tubal-Cain, then Crowley is entitled to the same indemnification for attorneys' fees that Tubal-Cain enjoyed in the coverage case. Dkt. 77 at 9. Crowley also contends that these two clauses mean that Tubal-Cain's failure to obtain insurance as required by the procurement clause renders Tubal-Cain liable for Crowley's attorneys' fees in the coverage litigation because they were incurred "in consequence of" Tubal-Cain's failure to name Crowley as an additional insured under the Policy. *Id.* at 6–7.

First, as to the minimum coverage clause argument, Crowley has not presented any evidence in its briefing that Tubal-Cain was indemnified for its attorneys' fees and expenses in the coverage case, nor has Crowley pointed to the contractual language governing Tubal-Cain's alleged indemnification right under the Policy. But even if Tubal-Cain was indemnified for its attorneys' fees in the coverage case, that fact does not compel the conclusion that Crowley possesses a reciprocal indemnification right under the minimum coverage clause. The clause is naturally understood in a more limited manner. Crowley has a right as an additional insured to be covered equally with Tubal-Cain "under such policies," which are the policies Crowley's contractors are required to obtain under subsections (1)–(7) of section C(4). The required policies include commercial general liability insurance, automobile liability insurance, and marine liability insurance,

12

but none of the required coverages specify indemnification for attorneys' fees and expenses related to coverage disputes. Because maritime indemnities for attorneys' fees in coverage litigation must be express, *see Nathaniel Shipping*, 920 F.2d at 1268, this failure precludes a finding that the parties intended a broad indemnification right under the minimum insurance clause. Instead, that clause requires contractors, including Tubal-Cain, to obtain basic insurance coverages specified in section C(4) and name Crowley as an additional insured for that coverage. Contractors need not extend their insurance coverage to Crowley as an additional insured beyond the required scope of this section.

With this understanding of the minimum coverage clause, the court turns to the procurement clause. Although Crowley argues for broad indemnification related to the failure to obtain insurance, this reading is not supported by the provision's text. Rather, Crowley is entitled to indemnification for its losses "in consequence of," or due to, Tubal-Cain's failure to procure the *required* insurance. In other words, Crowley has no indemnification right for losses beyond the requisite coverage. Because Clause C(4) does not expressly require insurance to cover attorneys' fees for determining indemnification rights, the court holds that the insurance clause provides no right of indemnification to Crowley for its attorneys' fees incurred in prosecuting and defending the claims asserted in the coverage case.

## B. The Underlying Litigation

Based on the court's construction of Clause A(13), described above, Tubal-Cain must indemnify Crowley for its attorneys' fees incurred in defending itself against personal injury claims in connection with the repair service orders at issue. This indemnification right extends to the underlying personal injury litigation, and Tubal-Cain does not challenge this construction.[6]

---

[6] Tubal-Cain does challenge the starting and end point of indemnification for Crowley's fees in the underlying litigation, as well as Crowley's overall fee calculations, Dkt. 79 at 16–20, but Tubal-Cain does not object to a construction of the indemnity clause permitting the general recovery of this type of expense.

Instead, Tubal-Cain's opposition to indemnification stems from its position that Crowley did not timely request attorneys' fees under Federal Rule of Procedure 54(d). That rule provides: "A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." FED. R. CIV. P. 54(d)(2)(A). Because Crowley's attorneys' fees are sought as part of its breach of contract claim, and which Crowley properly pled in its third-party complaint, Dkt. 14 at 7 ¶ 9, these fees are part of Crowley's damages "to be proved at trial." FED. R. CIV. P. 54(d)(2)(A).

Crowley requested a hearing on attorneys' fees during trial, Dkt. 42 at 53, but Tubal-Cain argues that the failure of this court to award Crowley attorneys' fees in its April 12, 2010 Final Judgment bars Crowley from seeking attorneys' fees in this post-remand proceeding. This is too narrow a view of the Federal Rules. The court's Final Judgment, while not addressing the recovery of attorneys' fees explicitly, found in favor of Crowley on its claims "for contractual defense and indemnity." Dkt. 53 at 1. This judgment covered certain attorneys' fees in Crowley's defense, as certain fees are recoverable under Clause A(13), but the issue of the precise scope and calculation of those fees was a substantive issue not addressed before the case was appealed to the Fifth Circuit. And in this circuit, an attorneys' fees claim, even one whose recovery is based on contract, may remain pending while the final judgment is on appeal. *See Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202–03 (1988); *First Nationwide Bank v. Summer House Joint Venture*, 902 F.2d 1197, 1199–1200 (5th Cir. 1990) ("[I]t is clear from its sweeping language that *Budinich* establishes a 'bright line' rule that applies with equal force where attorneys' fees are sought under a *contract*.") (emphasis in original). Thus, on remand, Crowley may proceed with its attorneys' fees claim, consistent with Rule 54(d), to establish the scope and amount of recoverable fees under its contract with Tubal-Cain. Tubal-Cain's procedural objection is **OVERRULED**.

**C. Tubal-Cain's Motion to Exclude**

Tubal-Cain also moves to exclude exhibits A and B to Crowley's memorandum in support of its claim for attorneys' fees. Dkt. 81 at 1–2. Tubal-Cain argues that these exhibits should be excluded from evidence because they were not timely produced during discovery. *Id.* But whether Crowley produce this information in compliance with Rule 26, exclusion of the exhibits from evidence is unwarranted in these circumstances, and Tubal-Cain's motion to exclude (Dkt. 81) is **DENIED**.

Still, the court recognizes that determination of Crowley's fee award related to the underlying litigation merits a short period of discovery. The court will thus permit post-remand discovery over a period of sixty (60) days from the date of this order regarding the extent of Crowley's entitlement and calculation of attorneys' fees in the underlying litigation.[7] After that discovery period closes, Tubal-Cain is ORDERED to file its objections to Crowley's fees in the underlying litigation, or file a notice of no objections, no later than eighty-one (81) days after the date of this order. Crowley may file a response to Tubal-Cain's submission seven (7) days after the filing of Tubal-Cain's objections. Tubal-Cain may then file a reply brief no later than seven (7) days after Crowley's response. After Tubal-Cain's time for filing a reply brief has passed, the court will take the issue of attorneys' fees in the underlying litigation under submission. If necessary after reviewing the parties' briefing, the court will set a date for an oral hearing.

---

[7] Tubal-Cain argues in its brief that if fees are awarded to Crowley related to the underlying tort litigation, the extent of Crowley's fees should be narrowed by time, as to dates of tender and assumption of defense, and amount, as evaluated under a lodestar analysis. Dkt. 79 at 17–19. Because these arguments were made without the benefit of discovery, Tubal-Cain's objections are **OVERRULED WITHOUT PREJUDICE**. Tubal-Cain may reurge these and other objections to the extent and amount of Crowley's recoverable attorneys' fees under the schedule set forth in this order.

## IV. Conclusion

After considering the extensive post-remand briefing in this case and the applicable law, the court **VACATES** its May 3, 2012 order granting attorneys' fees (Dkt. 84) and its May 14, 2012 final judgment (Dkt. 86). The court substitutes this memorandum opinion and order in place of the May 3, 2012 order. The court holds that under Crowley's Terms and Conditions, Crowley is not entitled to indemnification for attorneys' fees in the coverage litigation. However, Tubal-Cain must indemnify Crowley for fees incurred in the underlying tort litigation related to Marcus Parker's alleged personal injuries. The court will enter final judgment, including a fee award, after a period of discovery and briefing on the extent and calculation of Crowley's recoverable attorneys' fees. *See* Part III.C, *supra*. Tubal-Cain's motion to exclude evidence (Dkt. 81) is **DENIED**. Crowley's motion (Dkt. 90) and Tubal-Cain's motion to add and motion to alter (Dkts. 91–92) are **DENIED AS MOOT**.

It is so **ORDERED**.

Signed at Houston, Texas on December 12, 2012.

_____
Gray H. Miller
United States District Judge